[Crim. No. 7862. First Dist., Div. One. Apr. 8, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD SHAW BEVINS, Defendant and Appellant.

**COUNSEL**

Sheldon Portman, Public Defender, Harry J. Delizonna and Ronald A. Norman, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci, and Michael J. Kelly, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**MOLINARI, P. J.**—By this appeal from a judgment of conviction entered upon a guilty plea to violation of Health and Safety Code section 11530 (possession of marijuana), defendant challenges the denial of his motion to suppress evidence pursuant to Penal Code section 1538.5.[1] This motion was submitted by stipulation on the preliminary hearing transcript which discloses the following facts.

On the morning of August 29, 1968, Deputy Sheriff Richard Hesenflow, a narcotics investigator[2] received a telephone call from a Mrs. Mallory. Mrs. Mallory informed Hesenflow that she had overheard a telephone conversation between her teenage daughter Janet and a person named John. Mrs. Mallory told Hesenflow that in this conversation Janet had asked John if she could purchase some "speed" from him.[3] John replied that he didn't have any, but he could take her some place to someone who did. Arrangements were made to meet after school hours at Janet's school. Janet also made the statement that they would "have to walk wherever they go." At this point Hesenflow terminated the conversation and told Mrs. Mallory he would come to see her personally. Within the hour he arrived at the Mallory home and was told by Mrs. Mallory that, in the conversation between her daughter and John, Janet had asked John what his real name was, and he informed her that John was a fictitious name, but she could call him by any name she wished. Mrs. Mallory then asked Hesenflow to search her daughter's room for drugs. None were found.

Hesenflow left the Mallory residence and proceeded to Prospect High School where he contacted the school authorities and informed them of the purpose of his visit. He was given a copy of Janet's class schedule and stationed himself outside the classroom door. Around 2:30 p.m., the time school let out, Hesenflow noticed defendant and another man, identified by the name Cremmins, enter the school grounds from a public street and walk across the school parking lot toward the school. At the same

[1]Authority for appellate review on the denial of a motion made under Penal Code section 1538.5 is specifically provided in Penal Code section 1538.5, subdivision (m), where it states: "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty. Such review on appeal may be obtained . . . providing that at some stage of the proceedings prior to conviction [defendant] has moved for the return of property or the suppression of the evidence."

[2]The record indicates that Hesenflow had a total of eight years' experience as a law enforcement officer, the two most recent years as a narcotics officer.

[3]Hesenflow identified "speed" as methedrine.

moment Janet, who had finished her last class, walked to the edge of the parking lot, stopped and looked over the lot, saw defendant and ran toward him, taking his arm. The two men and Janet then began to walk back toward the campus. As they walked through the campus there were many students about as a result of the school closing. Hesenflow had been following the trio while they were walking and became concerned that he might lose sight of them in the throng of students, so he approached them, displayed his identification, and asked all three to step into the office of the Dean of Girls.[4] Hesenflow testified that although he had not observed any overt actions indicating an obvious narcotics violation, his intent upon stopping defendant, Janet, and the other man was to make an arrest for loitering.

Upon entering the dean's office defendant, Cremmins, and Janet were asked to remove all articles from their pockets and place them on the desk around which they were seated. Because he was unsure of the specific code section for loitering, Hesenflow went out of the room to obtain a copy of the Penal Code, leaving the three in the custody of Sergeant Shaeffer, who had assisted him in the surveillance. Upon his return Hesenflow informed defendant and Cremmins that they were under arrest for loitering on the school grounds. Shaeffer then picked up a closed Marlboro cigarette package, which defendant had earlier removed from his shirt pocket, and opened it. The package contained four standard cigarettes and one marijuana cigarette. Defendant was then arrested on the additional charge of possession of marijuana.

Defendant was charged by information with violation of Health and Safety Code section 11530[5] (possession of marijuana) and Penal Code section 653g (loitering on school grounds). Upon defendant's plea of guilty to the possession charge, the loitering charge was dismissed upon motion of the district attorney. The issue in this case is whether Hesenflow had probable cause to arrest defendant on the school campus so as to support a search incident to that arrest. We conclude that the officer had probable cause to arrest defendant for violation of sections 11913 and 11917. We also conclude that the officer had probable cause to arrest defendant for loitering on school grounds. (Pen. Code, § 653g.)

It is unlawful to possess any restricted dangerous drug except upon a proper prescription. (§ 11910.) Section 11901 defines "restricted danger-

---

[4]At the time Hesenflow identified himself he recognized defendant and Cremmins from an encounter several weeks earlier when defendant told Hesenflow that he had a prior narcotics arrest record.

[5]Unless otherwise indicated, all statutory references are to the Health and Safety Code.

ous drugs" and includes among these amphetamine whose trade name is methedrine. (See *Randle* v. *California State Board of Pharmacy,* 240 Cal.App.2d 254, 257 [49 Cal.Rptr. 485, 17 A.L.R.3d 1398]; *Elder* v. *Board of Medical Examiners,* 241 Cal.App.2d 246, 249, fn. 1 [50 Cal. Rptr. 304].) At the time of the instant arrest it was unlawful for any person to intentionally solicit, induce or encourage a minor to violate any of the provisions involving restricted drugs or to unlawfully furnish, offer to furnish or attempt to furnish restricted dangerous drugs to any minor. (§ 11913.)[6] It was also unlawful at the time of the instant arrest, as it is now, for a person to agree, consent, or in any manner offer to unlawfully sell, furnish or give any restricted dangerous drug to any person. (§ 11917.) These crimes are punishable as felonies. (See § § 11913 and 11917.)

Adverting to the crime of loitering on school grounds, we observe that section 653g of the Penal Code provides that a person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant subject to punishment as a misdemeanant. The provisions now found in Penal Code section 653g have been held to be constitutional and to proscribe only that species of lingering and idling about schools or public places which is engaged in for the purpose or with the intent of effectuating some criminal act or committing a crime as opportunity may be discovered. (*In re Huddleson,* 229 Cal.App.2d 618, 621, 622-626 [40 Cal.Rptr. 581]; *Mandel* v. *Municipal Court,* 276 Cal.App.2d 649, 657-658, 663 [81 Cal.Rptr. 173].)

With the foregoing statutes in mind we proceed to consider the validity of defendant's arrest. We note, initially, that a valid arrest without a warrant may be made solely by reason of information communicated by a reliable informant. (*People* v. *Prewitt,* 52 Cal.2d 330, 337 [341 P.2d 1]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294-295 [294 P.2d 36]; *People* v. *Cedeno,* 218 Cal.App.2d 213, 219 [32 Cal.Rptr. 246].) A citizen who purports to be a victim of or to have witnessed a crime is a reliable informant even though his reliability has not theretofore been proved or tested. (*People* v. *Gardner,* 252 Cal.App.2d 320, 324-325 [60 Cal.Rptr. 321]; *People* v. *Griffin,* 250 Cal.App.2d 545, 550-552 [58 Cal.Rptr. 707]; *People* v. *Lewis,* 240 Cal.App.2d 546, 549-550 [49 Cal.Rptr. 579]; *People* v. *Scoma,* 71 Cal.2d 332, 338, fn. 7 [78 Cal.Rptr. 491, 455 P.2d 419].) The rationale underlying this principle is that such a person, as the observer of criminal activity, acts openly in aid of law enforcement when he reports the crime to the police. (*People* v. *Gardner, supra; People* v. *Lewis, supra.*)

[6]In 1969 section 11913 was amended to provide that in order to violate this section the furnisher must be of the age of 21 years or over.

In the instant case Hesenflow was entitled, in the light of the foregoing principles, to rely on the information imparted to him by the citizen-informer Mrs. Mallory. That information was to the effect that she overheard a telephone conversation between her daughter and a man identified as John, in which John made an appointment to meet Janet at school in order to take her to someone who would furnish her with some methedrine. Since Janet was attending high school it is reasonable to assume that Janet was a minor. In our opinion that conversation, if true, would support a conviction of the man identified as John for a violation of section 11913, since John was not only inducing and encouraging Janet to violate the law against the possession of restricted dangerous drugs, but was also offering to furnish Janet with such a drug. The same conversation would also justify a conviction for violating section 11917 which proscribes, among other things, an agreement by which a person offers to furnish a restricted dangerous drug. Accordingly, since Mrs. Mallory was a witness to these crimes, she is a citizen-informer upon whose information Hesenflow was entitled to rely in making an arrest for these crimes.

Considering Penal Code section 653g we note that when Hesenflow observed Janet meet the two men on the school campus he was in possession of the information from Mrs. Mallory that a man identified as John had told Janet he would meet her at the school for the purpose of accompanying her to another location to obtain methedrine for her. As indicated above, there was probable cause to believe that "John" had committed the crimes proscribed in sections 11913 and 11917. ■ As observed in *People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564], "Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officers at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense."

In the present case Hesenflow, at the time of the arrest, had reasonable cause to believe defendant had committed a felony. (Pen. Code, § 836.) He also had reasonable cause to believe that defendant lingered and idled about the school campus for the purpose of effectuating the criminal act of furnishing methedrine to Janet. ■ Having such reasonable cause, he was justified in arresting defendant for the misdemeanor proscribed in Penal Code section 653g because the act of loitering for such criminal purpose was committed in his presence. (Pen. Code, § 836.) The fact that Hesenflow did not announce that he was making the arrest for violation of sections 11913 and 11917, but only informed defendant that he was arrested for violating Penal Code section 653g, does not detract from the validity of the arrest since the arrest for violating Penal Code section 653g was a valid arrest. (*People* v. *Graves,* 263 Cal.App.2d 719, 737 [70 Cal.

Rptr. 509]; see *People* v. *Woods,* 239 Cal.App.2d 697, 702 [49 Cal.Rptr. 266];[7] *People* v. *Walker,* 273 Cal.App.2d 720, 724-725 [78 Cal.Rptr. 439].) ■ Penal Code section 841, which requires that the person making the arrest must inform the person to be arrested of the cause of the arrest, does not require the officer to inform the person he is arresting of the nature of each offense for which he is being arrested unless so requested by such person. (*People* v. *Graves, supra.*) ■ Moreover, a defendant may not be heard to complain that he was not informed of the cause of the arrest when the police officers had reasonable cause to believe that he was actually engaged in the commission of an offense. (Pen. Code, § 841; *People* v. *Ambrose,* 199 Cal.App.2d 846, 852 [19 Cal.Rptr. 102]; *People* v. *Sjosten,* 262 Cal.App.2d 539, 545 [68 Cal.Rptr. 832]; *People* v. *Villareal,* 262 Cal.App.2d 438, 445 [68 Cal.Rptr. 610].)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied April 24, 1970.

---

[7]Disapproved on an unrelated point in *People* v. *Doherty,* 67 Cal.2d 9, 15 [59 Cal.Rptr. 857, 429 P.2d 177].